MINA INVESTMENT HOLDINGS LTD. and Pentium Capital Holdings, Ltd., Plaintiffs,

v.

Steven W. LEFKOWITZ, Meco Holdings, L.L.C., Mill Equipment & Engineering Corp., Meco Investment Corp., Scoggin Capital Management, L.P., Selig Partners, L.P. and Nippon Credit Trust Co., Defendants.

No. 97 Civ. 1321(RWS).

United States District Court, S.D. New York.

Aug. 6, 1998.

---

Berlack, Israels & Liberman, New York City (Andrew Dash, of counsel), Tachau, Maddox, Hovious & Dickens, Louisville, KY (David Tachau, Clay M. Stevens, of counsel) for plaintiffs.

Winston & Strawn, Attorney for Nippon Credit Trust Co., New York City (Ivan Kline, Gary B. Glass, of counsel) for defendant.

## OPINION

SWEET, District Judge.

Defendant Nippon Credit Trust Co. ("Nippon") has moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss claims against it for tortious interference with contractual relations, unjust enrichment, rescission, and reformation brought by Plaintiffs Mina Investment Holdings Ltd. ("Mina") and Pentium Capital Holdings, Ltd. ("Pentium") (collectively, the "Plaintiffs"), on the ground that they have failed to state claims upon which relief can be granted. For the reasons set forth below, Nippon's motion to dismiss is granted.

### The Parties

Plaintiffs are investment companies incorporated in the British Virgin Islands, with their principal place of business in Switzerland, where their sole director, an entity named Saturn Corporate Services Inc. ("Saturn"), is located, and where officials of Saturn directed, controlled, and coordinated all of their activities.

Defendant Steven W. Lefkowitz ("Lefkowitz") is a resident of Kings County, N.Y. He has identified himself as chairman of the board of directors and president of Defendant MECO Holdings, L.L.C. ("MECO Holdings"), and as chairman of the board of directors of Defendant Mill Equipment & Engineering Corporation ("MECO").

Defendant MECO Holdings is a limited liability company organized and existing under the laws of Delaware. Since April 1994, MECO Holdings has owned the majority of the stock of Defendant MECO, a Delaware corporation. The management of MECO Holdings was occasionally nominally vested in an entity named Wade Capital Corporation, a Delaware corporation wholly owned and controlled by Defendant Lefkowitz.

Defendant MECO is a Delaware corporation, with its principal place of business in Pittsburgh, Pennsylvania. It is engaged in the manufacture of electrical and mechanical equipment for customers in the metals industry.

Defendant MECO Investment Corp. ("MIC") is a Delaware corporation and a wholly owned subsidiary of Defendant MECO, incorporated on June 16, 1995.

Defendant Scoggin Capital Management, L.P. is a domestic limited partnership organized and existing under the laws of Delaware.

Defendant Selig Partners, L.P. ("Selig") is a domestic limited partnership organized and existing under the laws of Delaware. Selig was both an equity investor in MECO Holdings, as well as a party which loaned money to MECO Holdings for the acquisition of MECO.

Defendant Nippon is a bank and trust company existing under the laws of New York.

### Prior Proceedings

Plaintiffs filed their original complaint on February 25, 1997, and their first amended complaint (the "Amended Complaint") on January 12, 1998, in which Plaintiffs added Selig and Nippon as defendants. The Amended Complaint contains a total of three counts, of which only Counts II and III are directed against Nippon. Count I alleges breach of contract against MECO Holdings, and demands specific performance. Count II alleges tortious interference with contractual relations against all Defendants except MECO Holdings, and Count III alleges unjust enrichment, rescission, and reformation of contracts against all Defendants.

Nippon filed the instant motion on March 30, 1998. Oral arguments were heard on May 27, 1998, at which time the motion was deemed fully submitted.

**358**

### Facts

On a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., the facts of the complaint are presumed to be true, and all factual inferences are drawn in the plaintiff's favor. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). Accordingly, the factual allegations considered here and set forth below are taken from the Amended Complaint and do not constitute findings of fact by the Court. They are presumed to be true only for the purpose of deciding the present motion.

In April 1994, Plaintiffs agreed to loan MECO Holdings $1 million to partially finance the acquisition of MECO. In addition to the $1 million received from Plaintiffs, MECO Holdings received an addition $500,-000 from Selig to finance the purchase of MECO's outstanding stock. In July 1994, Defendant Scoggin purchased one-half of Selig's interest in MECO Holdings.

Plaintiffs' loan was made in exchange for certain rights and obligations by MECO Holdings which were set out in an agreement dated April 4, 1994 (the "Purchase Agreement"). Among other things, the terms of the Purchase Agreement provided that Plaintiffs would receive a "senior promissory note" for $1 million plus interest, payable in five years; warrants for the purchase of 100,000 shares of stock in MECO; a covenant by MECO Holdings to furnish additional warrants for the purchase of 50,000 shares of MECO stock on each subsequent anniversary date of the Purchase Agreement in which debt or interest remained outstanding on the promissory note; and various affirmative covenants and limitations (including negative covenants) by MECO Holdings.

Among the negative covenants were the following:

6B. *Lien Debt and Other Restrictions.* So long as any Note shall remain outstanding, the Company covenants that it will not and will not permit any subsidiary to: ...

6B(2) *Debt.* Create, incur or assume any additional Debt not existing immediately after the closing, ...

6B(4) *Issuance of Stock by the Company or Subsidiaries.* So long as any Note shall remain outstanding, the Com-

pany will not (either directly, or indirectly by the issuance of rights or options for, or securities convertible into, such shares) issue, sell, or otherwise dispose of any shares of any class of its stock and will not permit any Subsidiary (either directly or indirectly by the issuance of rights or options for, or securities convertible into, such shares) to issue, sell or otherwise dispose of any shares of any class of its stock ...

6B(7) *Certain Contracts.* Enter into or be a party to any contract other than those existing immediately following the closing and other than those dealing with the provision to the Company of routine administrative and accounting services, for fees not to exceed, in the aggregate, $10,000 per annum.

Prior to the loan agreement with Nippon, actions of Defendants other than Nippon violated the Purchase Agreement on several occasions. During May and June 1994, $600,000 was transferred from MECO to MECO Holdings, and Lefkowitz authorized the payment of $150,000 per year to one of his own entities, Wade Capital Corporation. In July 1995, MECO Holdings obtained a $300,000 loan from Scoggin, which was granted seniority over Plaintiffs' loan and for which Scoggin received warrants for 37,500 shares of stock. In May 1995, MECO and MECO Holdings created MIC to be used to form a joint venture with Bethlehem Steel Corporation called Chicago Cold Rolling, L.L.C. ("CCR"). MECO and MECO Holdings then arranged to have Nations Bank loan approximately $40 million to the joint venture in order to finance the construction of a steel mill outside of Chicago. As part of the financing from NationsBank, MECO Holdings, and MECO obtained a $300,000 loan from Scoggin and other nonparty lenders. Lefkowitz, MECO Holdings, and MECO also arranged to have Scoggin and the other lenders loan them an additional $6 million to obtain a letter of credit for a performance bond required by NationsBank to insure the completion of the CCR mill. In return, Scoggin and the other lenders received warrants to purchase up to one-third of MIC's outstanding shares of stock plus an

interest payment made in August 1996 of $158,000 for each investor. Also in 1995, Plaintiffs did not receive warrants for additional 50,000 shares of MECO stock on the anniversary of the Purchase Agreement.

On November 21, 1995, Lefkowitz, MECO Holdings, and MECO acted to accept a commitment whereby Nippon would loan $3 million to MECO, to be used to fund the CCR joint venture. The loan was closed on August 2, 1996. In return for the loan, Nippon received warrants for the purchase of 175,000 shares of nonvoting stock in MECO, which would be convertible into voting stock upon transfer by Nippon.

In connection with the consummation of the Nippon loan, MECO's attorneys from the law firm Kramer Levin Naftalis & Frankel ("Kramer Levin") provided a letter stating in an attached schedule that before entering into the loan agreement with Nippon, MECO must obtain consents in order to avoid violating the Purchase Agreement. No consent form was ever provided to Plaintiffs, and the Kramer Levin attorneys and Nippon's representative and counsel were aware that Plaintiffs had not provided the requisite consent to the $3 million loan.

About November 1, 1996, Plaintiffs informed Lefkowitz that MECO holdings was in default because of the multiple breaches of its contractual obligations, and Plaintiffs accelerated MECO's obligation to make full payment on its $1 million loan plus interest. On November 27, 1996, MECO Holdings sent $1 million plus accrued interest to Mina by wire transfer. At the same time, Lefkowitz sent a copy of MECO's financial statements for the period ending September 30, 1996. These statements revealed to Plaintiffs for the first time that Defendants had proceeded with the Nippon loan without their knowledge or consent.

Plaintiffs allege that Nippon's actions have denied them the benefit of their contractual bargain and have resulted in misappropriated corporate opportunities and financial injury in excess of $75,000.

## Discussion

### I. *Rule 12(b)(6)*

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195, (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59, (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, (1957).

### II. *Nippon's Motion To Dismiss Claim for Tortious Interference With Contract Is Granted*

■ To state a claim for tortious interference with contractual relations under New York law, a plaintiff must allege "(1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages." *150 East 58th St. Partners, L.P. v. Wilkhahn Wilkening & Hahn GmbH & Co.*, No. 97 Civ. 4262, 1998 WL 65992, at *1 (S.D.N.Y. Feb.17, 1998) (*quoting Riddell Sports Inc. v. Brooks*, 872 F.Supp. 73, 77 (S.D.N.Y.1995)); *see Jews for Jesus, Inc. v. Jewish Community Relations Council of N.Y., Inc.*, 968 F.2d 286, 292 (2d Cir.1992); *Union Carbide Corp. v. Montell N.V.*, 944 F.Supp. 1119, 1136 (S.D.N.Y.1996); *Foster v. Churchill*, 87 N.Y.2d 744, 749–50, 665 N.E.2d 153, 156, 642 N.Y.S.2d 583, 586 (1996). Additionally, the plaintiff must assert that defendant's actions were the "but for" cause of the alleged breach of contract— that is, that there would not have been a breach but for the activities of the defendant. *See Sharma v. Skaarup Ship Management Corp.*, 916 F.2d 820, 828 (2d Cir.1990); *Michelle Pommier Models, Inc. v. Men Women N.Y. Model Management, Inc.*, No. 97 Civ. 6837, 1997 WL 724575, at *3 (S.D.N.Y. Nov.18, 1997); *Demalco Ltd. v. Feltner*, 588 F.Supp. 1277, 1280 (S.D.N.Y.1984); *Washington Ave. Assocs., Inc. v. Euclid Equip., Inc.*, 229 A.D.2d 486, 487, 645 N.Y.S.2d 511, 512 (2d Dep't 1996). The pleadings may not be conclusory; rather they must be supported by sufficient allegations of fact. *See*

*150 East 58th St.,* 1998 WL 65992, at *2; *S.A.E. Motor Parts Co., Inc. v. Tenenbaum,* 226 A.D.2d 518, 519, 640 N.Y.S.2d 615, 616 (2d Dept.1996).

■ Defendants contend that Plaintiffs have failed to allege facts demonstrating that Nippon intentionally procured breach of the Purchase Agreement, that Nippon knew of the Purchase Agreement, that Plaintiffs suffered damages as a result of MECO's alleged breach, and that Nippon's actions were the "but for" cause of MECO's alleged breach. Because Plaintiffs have not adequately pleaded "but for" causation, the tortious interference with contract claim against Nippon must be dismissed.

According to Plaintiffs, the causation requirement has been met because "but for" Nippon's decision to close the loan without Plaintiffs' consent, MECO and MECO Holdings would not have breached the Purchase Agreement provision prohibiting the assumption of additional debt.

Yet this conclusory allegation without any relevant supporting facts is insufficient to state a cause of action for tortious interference with contractual relations against Nippon. *See Euclid Equip.,* 229 A.D.2d at 487, 645 N.Y.S.2d at 512. Moreover, Plaintiffs must allege "but for" causation for each individual defendant and cannot satisfy that requirement merely by alleging that two or more defendants acted in concert to cause the breach. *See Crossland Fed. Sav. Bank v. 62nd and First Assocs., L.P.,* No. 92 Civ. 4056, 1993 WL 410461, at *4 (S.D.N.Y. Oct.12, 1993); *Sharma v. Skaarup Ship Management Corp.,* 699 F.Supp. 440, 447 (S.D.N.Y.1988), *aff'd,* 916 F.2d 820 (2d Cir. 1990) [*Sharma I* ].

The *Crossland* court dismissed a defendant's counter-claim for tortious interference with contract because defendant's assertion that "plaintiff participated in efforts 'to conspire with Cineplex to breach or repudiate its Lease with [defendant]'" failed to establish "but for" causation. *Crossland,* 1993 WL 410461, at *4. The court reasoned that plaintiff's activities with the Cineplex "in no way forecloses other reasons" for Cineplex's decision to violate its contract with defendant. *Id.*

In *Sharma I,* the district court dismissed a claim for tortious interference with contractual relations where the complaint alleged that "the Skaarup defendants procured the breach 'by conspiring and acting with Chemical to make it impossible for plaintiffs to arrange the necessary financing, which Chemical was obligated to allow and encourage.'" *Sharma I,* 699 F.Supp. at 447. The court found that "[t]he allegation that the Skaarup defendants acted in concert with Chemical implies that Chemical would have breached its obligations even without the involvement of the Skaarup defendants." *Id.* "In no way do plaintiffs allege that Skaarup defendants were the motivating force behind Chemical's breach." *Id.*

In the instant case, the only factual allegation Plaintiffs rely upon in pleading "but for" causation is Nippon's decision to close the loan without Plaintiffs' consent. As in *Crossland* and *Sharma I,* Plaintiffs allege only that Nippon conspired or acted with MECO and MECO Holdings, and thus do not foreclose the possibility that MECO and MECO Holdings would have violated the Purchase Agreement regardless of Nippon's participation. Thus Plaintiffs have not alleged that there would not have been a breach but for Nippon's conduct.

Indeed, Plaintiffs allege that their Purchase Agreement with MECO Holdings was breached at least nine separate times by MECO and MECO Holdings before the Nippon transaction even occurred. The Purchase Agreement, therefore, could not be completed regardless of Nippon's conduct. Moreover, these facts, if taken as true, demonstrate MECO and MECO Holdings' disregard for Plaintiffs' rights under the Purchase Agreement.

In dismissing a claim for tortious interference with contract, the court in *Special Event Entertainment v. Rockefeller Ctr., Inc.,* 458 F.Supp. 72 (S.D.N.Y.1978), took note of plaintiff's allegations that the breaching parties "were not disposed toward honoring their alleged commitment even before [they] entered the negotiations." *Special Event Entertainment,* 458 F.Supp. at 78. In the instant case, Plaintiffs' allegations of mul-

tiple breaches of the Purchase Agreement prior to negotiations with Nippon similarly demonstrate that MECO and MECO Holdings were not inclined to fulfill their contractual obligations.[1] It therefore appears not only possible, but also probable—at the least, a logical inference—that even without the participation of Nippon, MECO and MECO Holdings would have secured an additional loan from some other commercial lender in violation of the Purchase Agreement.

Because Plaintiffs have not sufficiently alleged "but for" causation, their claim for tortious interference with contract against Nippon is dismissed.

### III. *Nippon's Motion To Dismiss Claim for Unjust Enrichment Is Granted*

In Count III of their Amended Complaint, Plaintiffs request relief including "disgorgement and delivery to plaintiffs of the wrongful payments, warrants, fees and other consideration the defendants have and will receive in unjust enrichment by reason of their conduct."

■ To state a claim for unjust enrichment, a plaintiff must allege that the defendant was enriched at the plaintiff's expense and that the circumstances are such that equity and good conscience require that defendant make restitution. *See ABF Capital Management v. Askin Capital Management*, 957 F.Supp. 1308, 1333 (S.D.N.Y.1997); *Violette v. Armonk Assocs., L.P.*, 872 F.Supp. 1279, 1282 (S.D.N.Y.1995). Unjust enrichment is a quasi-contractual remedy, so that such a claim is ordinarily unavailable when a valid and enforceable written contract governing the same subject matter exists. *See ABF Capital*, 957 F.Supp. at 1333–34; *Clark–Fitzpatrick, Inc. v. Long Island R.R.*

*Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653, 656 (1987). This is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract. *See ABF Capital*, 957 F.Supp. at 1334; *Graystone Materials, Inc. v. Pyramid Champlain Co.*, 198 A.D.2d 740, 604 N.Y.S.2d 295, 296 (3d Dep't 1993); *Metropolitan Elec. Mfg. Co. v. Herbert Constr. Co.*, 183 A.D.2d 758, 583 N.Y.S.2d 497, 498 (2d Dept.1992).

■ According to Plaintiffs, dilution of their equity interest due to the improper creation and issuance of new warrants to Nippon satisfies their pleading requirement that Nippon has been enriched at Plaintiffs' expense. Plaintiffs furthermore claim that because Nippon had actual knowledge that Plaintiffs' rights were violated, equity and good conscience requires Nippon to make restitution.

Plaintiffs, however, do not allege dilution of their equity interest in MECO. Nor have they claimed that they have suffered losses on their $1 million loan to MECO Holdings as a result of Nippon's actions. On the contrary, Plaintiffs admit that they received full payment plus interest less than four months after Nippon and MECO executed the $3 million loan agreement. Furthermore, although Plaintiffs assert that Nippon's actions denied them the benefit of their contractual bargain and resulted in misappropriated corporate opportunities and financial injury in excess of $75,000, they have not pled that Nippon consequently has been enriched. In their Amended Complaint, Plaintiffs allege only that Nippon loaned MECO $3 million in exchange for a promise to repay and 175,000 shares of MECO's nonvoting stock. These factual allegations alone are insufficient to

---

1. In their Amended Complaint, Plaintiffs allege at least nine separate breaches prior to the Nippon loan agreement: (1) transfer of $600,000 from MECO to MECO Holdings in May and June 1994 (Amended Complaint at ¶ 19); (2) Lefkowitz's management agreement authorizing annual payments to Wade Capital Corporation (Amended Complaint at ¶ 20); (3) $300,000 loan from Scoggin in July 1995 (Amended Complaint at ¶ 21); (4) MECO Holdings' failure to issue warrants for 50,000 shares of MECO stock to Plaintiffs in 1995 (Amended Complaint at ¶ 24); (5) formation of MIC in May 1995 (Amended Com-

plaint at ¶ 25); (6) subsequent transfer of $3 million to MIC (Amended Complaint at ¶ 27); (7) NationsBank loan of approximately $40 million to the joint venture CCR (Amended Complaint at ¶ 28); (8) $300,000 loan from Scoggin and others in March 1996; and (9) subsequent issue of warrants for MIC's outstanding stock to the lenders (Amended Complaint at ¶ 29). On August 2, 1996, Lefkowitz, MECO Holdings, MECO and Nippon, acting together, executed a loan agreement for $3 million. (Amended Complaint at ¶ 30.)

support Plaintiffs' claim of unjust enrichment.

Assuming *arguendo* that Plaintiffs had adequately pled the other elements of unjust enrichment, the alleged Purchase Agreement between Plaintiffs and MECO Holdings would preclude a finding that equity and good conscience demand restitution. Plaintiffs cite no cases in support of their proposition that a party in contract with another who suffered losses when that second party breached by entering into an agreement with a third party may recover from the third party on a claim of unjust enrichment. By contrast, in *ABF Capital*, this Court held that the plaintiffs who were individual investors in hedge funds were not entitled to recover fees and charges received by defendants investment advisors and brokers under a theory of unjust enrichment because a valid contract between defendants and the hedge funds governed the transactions. *See ABF Capital*, 957 F.Supp. at 1334. The Court stated that "[p]laintiffs' own lack of contract with the Defendants does not provide the basis for creating a quasi-contractual cause of action, when the Funds have a contractual cause of action to pursue." *Id.*

Here, Plaintiffs have alleged a valid and enforceable contract (the Purchase Agreement) prohibiting MECO Holdings from issuing new warrants. They furthermore have claimed that this contract was breached when Nippon received warrants for 175,000 shares of MECO stock in exchange for the $3 million loan. Thus any compensation to Plaintiffs for the alleged dilution in their holdings would be governed by the Purchase Agreement. Plaintiffs therefore do not have a valid claim for unjust enrichment against Nippon.

### IV. *Motion To Dismiss the Rescission and Reformation Claims Is Granted*

In their Amended Complaint, Plaintiffs allege that "in the alternative to any relief otherwise provided by law by reason of the wrongful conduct of ... Nippon Credit, plaintiffs are entitled to equitable relief including ... rescission or reformation of all agreements and contracts entered into by defendants in violation of plaintiffs' rights, in order to give plaintiffs the benefits of their bargain." (Amended Complaint at ¶ 64.)

### A. *The Rescission Claim Is Dismissed*

 "In order to justify the intervention of equity to rescind a contract, a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof." *Babylon Assocs. v. County of Suffolk*, 101 A.D.2d 207, 215, 475 N.Y.S.2d 869, 874 (2d Dep't 1984) (*citing Callanan v. Powers*, 199 N.Y. 268, 284, 92 N.E. 747, 752 (1910)).

> [B]efore rescission will be permitted the breach must be "material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." As an extraordinary remedy, rescission is appropriate only when a breach may be said to go to the root of the agreement between the parties.

*Septembertide Publ'g, B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 678 (2d Cir.1989) (*quoting Callanan*, 199 N.Y. at 284, 92 N.E. at 752). Additionally, rescission is an equitable remedy which will not be granted unless Plaintiffs lack an adequate remedy at law. *See Faden Bayes Corp. v. Ford Motor Co.*, No. 97 Civ. 1867, 1997 WL 426100, at *2 (S.D.N.Y. July 30, 1997); *Babylon Assocs.*, 101 A.D.2d at 215, 475 N.Y.S.2d at 874.

 Plaintiffs urge that

> [t]he multiple violations of the negative covenants in plaintiffs' Purchase Agreement that culminated in the issuance of stock warrants by which plaintiffs' equity interest was significantly diluted without any justification, together with the conscious denial of any opportunity for plaintiffs' to receive consideration for their consent to the Nippon transaction ..., which was accompanied by admittedly misleading conduct by defendant Lefkowitz and other defendant representatives, surely constituted breaches that were "material and willful, or if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the

contract." (*Canfield v. Reynolds,* 631 F.2d 169, 178 (2d Cir.1980)).

(Plfs.' Mem. Opp. to Mot. to Dismiss at 30.)

Nippon, however, contends that Plaintiffs have not adequately pled that Nippon's conduct was willful. Indeed, although Plaintiffs allege that Nippon had knowledge of the covenants and that Plaintiffs had not consented to the loan or issuance of new shares, they do not allege any facts demonstrating that Nippon intended to harm Plaintiffs.

Additionally, Plaintiffs fail to assert facts to support their contention that Nippon's loan defeated the object of, or was material to the breach of, the Purchase Agreement. For example, Plaintiffs' allegations that the Purchase Agreement was breached at least nine separate times before the execution of the Nippon loan diminishes any contention that Nippon's loan was a "material" breach. Furthermore, the basis of the Purchase Agreement was that Plaintiffs would loan MECO $1 million in exchange for a promise to repay the principal plus interest, warrants for the purchase of 100,000 of stock in MECO Holdings, and a commitment by MECO Holdings that they would receive warrants for 50,000 shares on each anniversary of the agreement as long as outstanding principal or interest remained. The covenants prohibiting MECO Holdings from engaging in certain types of transactions, however, are of secondary importance to the agreement.

Finally, Plaintiffs do not cite authority in support of their proposition that where a plaintiff's contract with another party is violated by a second contract between that other party and a third party, plaintiff is entitled to equitable relief by rescission of the second contract. Rather, rescission is not available where a plaintiff has an adequate remedy at law. *See Faden Bayes Corp.,* 1997 WL 426100, at *2; *Callanan,* 199 N.Y. at 284, 92 N.E. at 752. In the instant case, Lefkowitz and MECO Holdings allegedly breached the Purchase Agreement with Plaintiffs when they entered into the loan agreement with Nippon. "In New York, 'the law awards damages for breach of contract to compensate for injury caused by the breach....'" *Faden Bayes Corp.,* 1997 WL 426100, at *2

(*quoting Freund v. Washington Square Press, Inc.,* 34 N.Y.2d 379, 314 N.E.2d 419, 420, 357 N.Y.S.2d 857 (1974)). Thus, assuming Plaintiffs' allegations to be true, the appropriate remedy would be damages from Lefkowitz and MECO Holdings for breach of contract. The rescission claim is therefore dismissed.

**B.** *The Reformation Claim Is Dismissed*

Under New York law, "reformation may be granted only in two circumstances: where there has been a(1) mutual mistake; or (2) unilateral mistake coupled with fraudulent concealment by the knowing party." *Winmar Co., Inc. v. Teachers Ins. and Annuity Assoc. of America,* 870 F.Supp. 524, 535 (S.D.N.Y.1994) (citing *Chimart Assocs. v. Paul,* 66 N.Y.2d 570, 573, 489 N.E.2d 231, 233–34, 498 N.Y.S.2d 344, 346–47 (1986)); *see Affiliated FM Ins. Co. v. Jou Jou Designs, Inc. v. Silver v. Affiliated FM Ins. Co.,* Nos. 90 Civ. 8262, 96 Civ. 5194, 1997 WL 150139, at *4 (S.D.N.Y. Mar.28, 1997).

Plaintiffs have not alleged a mutual mistake or a unilateral mistake induced by fraudulent concealment. Nor have they asserted any factual allegation that supports such a claim. Accordingly, the claim for reformation is dismissed.

*Conclusion*

For the reasons set forth above, Nippon's motion to dismiss the tortious interference of contractual relations, unjust enrichment, rescission, and reformation claims against it is granted.

It is so ordered.