NEW PARADIGM SOFTWARE
CORP., Plaintiff,

v.

NEW ERA OF NETWORKS, INC. and
VIE Systems, Inc. defendants.

No. 99CIV.12409 (RMB).

United States District Court,
S.D. New York.

July 26, 2000.

Richard E. Signorelli, Stern, Levy & Pellegrino, L.L.P., New York City, for Plaintiff.

Jeffrey Golenback, Golenbock, Eiseman, Assor & Bell, New York City, for Defendants.

### ORDER

BERMAN, District Judge.

Plaintiff New Paradigm Software Corp. ("New Paradigm" or "Plaintiff") alleges in the instant complaint seven causes of action against Defendants New Era of Networks, Inc. ("NEON") and VIE Systems, Inc. ("VIE") (collectively, "Defendants") relating to the sale of a software program by the Plaintiff to Defendant VIE and the efforts of the both Defendants to avoid paying for this program. Plaintiff's claims include: breach of contract (first, second

and fifth claims); tortious interference with the contract between VIE and New Paradigm (third claim); unjust enrichment (fourth claim); rescission (sixth claim); and reimbursement and indemnification (seventh clam). Defendants have moved pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) to dismiss the unjust enrichment, and rescission and tortious interference claims in the First Amended Complaint[1] ("Amended Complaint"), as well as the breach of contract claim asserted against Defendant NEON to the extent that it includes punitive damages. Defendants contend that each of these claims fails to state a claim upon which relief can be granted. **For the reasons set forth below, the Court grants Defendants' motion with respect to the unjust enrichment and rescission claims and denies Defendants' motion with respect to the tortious interference claim and the punitive damages request.**

### I. Background

In early 1997, negotiations commenced between New Paradigm and VIE for the sale of "Copernicus," an adaptable computer software program which integrates disparate computer system formats so that information can be shared across systems. Plaintiff states that "in the computer and software industries, Copernicus is commonly and generally known as an enterprise application integration ('EAI') product." (Amended Complaint ('Compl.') ¶ 9). New Paradigm "had received two offers from other companies for Copernicus" (Compl.¶ 11), but in an agreement dated May 9, 1997 ('Agreement'), New Paradigm sold Copernicus to VIE. (Compl.¶ 12). The sale of Copernicus included, among other things, the patent rights to Copernicus, all other intellectual property rights to Copernicus, and the software for Copernicus. New Paradigm and VIE agreed that

---

1. Subsequent to a conference that occurred on February 28, 2000, Plaintiff amended its complaint. The Defendants' motion is also directed against the amended complaint, which is dated March 11, 2000.

New York law would apply to the interpretation and enforcement of the Agreement.

VIE paid New Paradigm $2,050,000 for the sale of Copernicus at the closing of the Agreement. (Compl.¶ 15). The Agreement provided that after the first anniversary of the closing date, VIE would be obligated to pay a royalty to New Paradigm "equal to 5% of the net revenue commencing from the first anniversary of the closing date unless a buyout payment was made." (Compl.¶ 16). "Net revenue was defined in the Agreement as being 'equal to the amount of cash received and retained by [VIE] for the sale, license and distribution of the computer programs known/ and or marketed as 'Copernicus software.'" (*Id.*) (quoting Agreement, § 2.1(c) & Schedule 2.1(c)). At any time prior to the fourth anniversary of the closing date, VIE could exercise the option of terminating its obligation to pay future royalties by paying New Paradigm the greater of $1,000,000 or the total of all royalties previously paid to New Paradigm (the "Termination Payment" or "Termination fee"). (Compl.¶ 25). VIE also agreed to pay New Paradigm an amount equal to the Termination Payment in the event that VIE transferred to a third party its rights and interests in Copernicus and such purchaser did not assume VIE's royalty obligations under the Agreement. (Agreement, Schedule 2.1(c), § 5(a)).

VIE's obligation to pay New Paradigm royalties commenced in July 1998, and VIE made such royalty payments during the period from July 1998 to April 1999. On April 6, 1999, NEON purchased all of the stock of VIE for $12,000,000. Plaintiff asserts that "the vast majority or practically all of the purchase price paid by NEON to VIE was for the patent and other intellectual property rights to Copernicus." (Compl.¶ 48). By letter dated April 12, 1999, Leonard Goldstein, the vice-president and senior counsel of NEON, notified New Paradigm that "**NEON has assumed responsibility for paying New Paradigm Software Corpo**ration all royalties due it under the Agreement." (Compl.Ex. C). Plaintiff claims that "by assuming (or purporting to assume) the responsibility to pay the Royalty under the Agreement, NEON was also assuming the responsibility of complying with the terms of the Agreement which relate to the payment of the royalty." (*Id.* ¶ 54). The terms which Plaintiff claims NEON assumed include: (1) the obligation to make a reasonable effort to market Copernicus; (2) the requirement not to materially alter pricing policies with respect to Copernicus for the purpose of reducing or negating its obligations to New Paradigm; (3) the implied covenant of good faith and fair dealing to undertake reasonable efforts to generate royalty income from Copernicus; (4) the obligation to produce records relevant to royalty payments for up to two years past; and (5) the obligation to indemnify New Paradigm for costs incurred as a result of a breach of any of the foregoing terms. (*Id.*).

Since April 1999, NEON has made two royalty payments, totaling $7,500, to New Paradigm in connection with revenue generated by Copernicus. Plaintiff contends that since its acquisition of VIE, NEON has not marketed Copernicus by name, but is currently "marketing software which is identical, virtually identical, or substantially similar to Copernicus" without paying royalties for the income generated from these Copernicus-like products. (*Id.* ¶ 64–65). According to the Plaintiff, NEON purchased VIE and Copernicus because "[b]y acquiring Copernicus, NEON would also be able to suppress a competing product to NEONet," (*Id.* ¶ 78), a software program sold by NEON. Plaintiff claims "NEON's NEONet Formatter seems to carry out the same functions and seems to follow the same methodology as Copernicus." (*Id.* ¶ 79). Plaintiff argues generally that NEON should either have been paying New Paradigm 5% of the royalties generated by NEONet and NEON's other allegedly Copernicus-like products, or

NEON should have paid the Termination fee. (Pl.'s Mem. at 12).

New Paradigm has asserted seven claims against the Defendants: (1) breach of contract for failure to make the Termination Payment; (2) (against NEON only) breach of contract by making no efforts at licensing Copernicus; (3) (against NEON only) tortious interference with the contract between VIE and New Paradigm; (4) unjust enrichment; (5) (against NEON only) breach of contract by actual or constructive licensing of Copernicus, in whole or in part, without payment of royalties to New Paradigm; (6) rescission of the Agreement; and (7) reimbursement and indemnification for all damages and expenses including, but not limited to attorneys' fees arising out of the breaches of the Agreement. (*Id.* ¶ 128–134). The Defendants' instant motion seeks to dismiss the Third (tortious interference), Fourth (unjust enrichment), and Sixth (rescission) claims for failure to state a claim on which relief can be granted, as well as the Fifth claim (breach of contract), to the extent that it seeks punitive damages.

## II. Standard of Review

In resolving a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In other words, the burden upon the movant is very substantial, as the issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, 'but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the

test.'" *Gant v. Wallingford Board of Education*, 69 F.3d 669, 673 (2d Cir.1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir.1976)(per curiam)). **"The motion to dismiss for failure to state a claim is disfavored...**" *Bower v. Weisman*, 639 F.Supp. 532, 539 (S.D.N.Y.1986) (citing *Arfons v. E.I. du Pont De Nemours & Co.*, 261 F.2d 434, 435 (2d Cir.1958)). While "'the well-pleaded material allegations of the complaint are taken as admitted... conclusions of law or unwarranted deductions of fact are not admitted.'" *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) (citations omitted).

## III. Discussion

### A. Unjust Enrichment (Fourth Claim)

Plaintiff claims that "[b]y reason of the acquisition and failure of NEON to actually assume the obligation to pay the Royalty, VIE has been enriched at the expense of New Paradigm," (Compl.¶ 108), and that "NEON has been unjustly enriched at the expense of New Paradigm in the amount of 5% of the net revenue deriving from... sales [of products which are actually identical or virtually identical to Copernicus]." (*Id.*). Relying on Rule 8(e)(2) ("Fed. R. Civ.P."), which allows a party to state multiple, and even inconsistent claims, Plaintiff asserts that pleading breach of contract does not prevent it from also pleading unjust enrichment. (Pl.'s Mem. at 18). Defendants respond that "unjust enrichment is a 'quasi-contractual' remedy which is generally not available where a valid and enforceable contract governing the same subject matter exists. This is a substantive rule, not a matter of pleading." (Def.'s Reply Mem. at 5). Therefore, Defendants argue, this claim should be dismissed.

In order to successfully plead unjust enrichment under New York law, "a plaintiff must demonstrate that a) the defendant was enriched; b) the enrichment

was at the plaintiff's expense; and c) the defendant's retention of that benefit would be unjust." *Van Brunt v. Rauschenberg,* 799 F.Supp. 1467, 1472 (S.D.N.Y.1992) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 37 (2d Cir.1979)). However, "unjust enrichment is a quasi-contractual remedy, so that such a claim is ordinarily unavailable when a valid and enforceable contract governing the same subject matter exists." *Mina Investment Holdings Ltd. v. Lefkowitz,* 16 F.Supp.2d 355, 361 (S.D.N.Y.1998); *Seiden Associates, Inc. v. ANC Holdings, Inc.,* 754 F.Supp. 37, 39 (S.D.N.Y.1991) ("to the extent that there is a valid and enforceable contract between plaintiff and defendants, plaintiff will not be able to seek recovery in quasi contract..."). As the New York State Court of Appeals explained in *Clark–Fitzpatrick v. Long Island Railroad Company,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987), "it is impermissible... to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." *Id.* at 385, 521 N.Y.S.2d 653, 516 N.E.2d 190.

■ Plaintiff argues that despite the existence of a valid contract, Rule 8(e)(2) gives Plaintiff "the absolute right to request alternative types of relief and to assert alternative theories whether based on legal or equitable grounds or both." (Pl.'s Mem. at 18). Plaintiff cites multiple cases which allow pleading of claims of unjust enrichment in addition to breach of contract claims. However, in each of these cases, the existence of the contracts upon which plaintiffs based their claims was at least partially disputed. *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660 (2d Cir.1996) (stating that unjust enrichment claim was properly pleaded in alternative to breach of contract claim where one defendant disputed being a party to the contract); *Marcella v. ARP Films, Inc.,* 778 F.2d 112 (2d Cir.1985) (allowing plaintiff to plead quantum meruit where the enforceability of the contract was the issue in dispute); *Knudsen v. Quebecor Printing,* 792 F.Supp. 234 (S.D.N.Y.1992) (permitting plaintiff to plead breach of contract and quantum meruit where the complaint did not set forth an express contract). There is no such dispute here. Because both parties agree that a valid and enforceable contract exists between them, Plaintiff may not plead the quasi-contractual theory of unjust enrichment.

## B. Rescission (Sixth Claim)

Plaintiff seeks rescission of the Agreement based on "[t]he breaches by NEON and VIE [which] have resulted in the elimination of more than one-third of the total consideration that should have been paid over to New Paradigm." (Compl.¶ 120). Defendants argue that New Paradigm may not plead rescission because "[t]he appropriate remedy to compensate for any injury caused by the breach is damages, not rescission of the Agreement." (Def.'s Mem. at 14). In addition, Defendants argue that the "alleged failure to pay one-third of plaintiff's anticipated royalties is a 'far cry' from the complete non-payment consistently required by New York courts to warrant rescission of a contract." (*Id.* at 12).

■ In order to justify the remedy of rescission, "a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof." *Mina Investment Holdings,* 16 F.Supp.2d at 362 (quoting *Babylon Assocs. v. County of Suffolk,* 101 A.D.2d 207, 475 N.Y.S.2d 869, 874 (1984)). In addition, it is well-settled that "rescission is an equitable remedy which will not be granted unless Plaintiffs lack an adequate remedy at law." *Mina Investment Holdings,* 16 F.Supp.2d at 362; *Faden Bayes Corp. v. Ford Motor Co.,* 1997 WL 426100 at *2 (S.D.N.Y. July 30, 1997).

In *New Shows, S.A. de C.V. v. Don King Productions, Inc.*, 2000 WL 354214 (2d Cir. April 6, 2000), where the plaintiff sought rescission after losing over $2 million in a joint venture with the defendant, the U.S. Court of Appeals for the Second Circuit explained that, "the harm plaintiff claims to have suffered is the financial loss it incurred"—"where damages appear adequate... rescission is inappropriate." *Id.* at *2. ("since the legal remedy in this case is adequate, the equitable remedy of rescission is simply inappropriate." *Id.* at *2). Plaintiff argues that "whether Plaintiff has an adequate remedy at law... is an issue to that is to be litigated in this lawsuit." (Pl.'s Mem. at 19). However, Plaintiff has asserted no reason why damages would not be an adequate remedy. "In New York, 'the law awards damages for breach of contract to compensate for injury caused by the breach...'" *Faden Bayes*, 1997 WL 426100 at *2 (quoting *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 357 N.Y.S.2d 857, 314 N.E.2d 419 (1974)).[2]

### C. Tortious Interference (Third Claim)

Plaintiff claims that NEON tortiously interfered with the Agreement between Plaintiff and VIE by "pretending to assume or falsely assuming, the royalty obligations of VIE." (Pl.'s Mem. Law. Opp. Def.'s Mot. Dismiss at 16 ("Pl.'s Mem.")). Plaintiff asserts that NEON intentionally "caused VIE to breach its contract with New Paradigm... by purporting to accept VIE's royalty obligations but in actuality not abiding by such obligations."

(Compl.¶ 103). The Agreement required VIE to make the Termination Payment to New Paradigm at or prior to VIE's acquisition by a third party if that third party did not assume VIE's royalty obligations. (Agreement, Schedule 2.1(c), § 5(a)). Plaintiff argues that by only "pretending" to assume the royalty obligations, NEON induced VIE not to pay the Termination fee, and thus to breach its contract with New Paradigm. Defendants contend that NEON is a successor company to VIE, and that Plaintiff's claim fails to state a claim upon which relief can be granted (Mem. Law. Supp. Def.'s Mot. Dismiss at 6 ("Def.'s Mem.")) because "[i]t is well settled under New York law that a party may not be held liable for tortiously interfering with its own contract." (*Id.* at 5). Alternatively, Defendants argue that "NEON is 'privileged' to interfere with the Agreement in order to protect its economic interests." (*Id.* at 6).

To state a claim for tortious interference under New York law, a plaintiff must allege "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." *Kronos, Inc. v. AVX Corporation*, 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289 (1993); *Union Carbide Corp. v. Montell N.V.*, 944 F.Supp. 1119, 1136 (S.D.N.Y.1996); *Foster v. Churchill*, 87 N.Y.2d 744, 749–50, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996). In its Amended Com-

---

**2.** In *Nolan v. Sam Fox Publishing Co.*, 499 F.2d 1394 (2d Cir.1974), where a composer sought rescission of the assignment of copyright on a popular song because of defendant's failure to pay 74% of royalties owed, the Second Circuit explained that: "rescission has been allowed... in cases in which a publisher has made none of the royalty payments." *Id.* at 1399. The Court denied rescission, however, because the defendant "did pay 26% of the royalties due, distinguish[ing] this case from cases where there was total failure to pay the required royalties." *Id.* at 1399. Similarly, in *Cafferty v. Scotti Bros. Records, Inc.*, 969 F.Supp. 193 (S.D.N.Y. 1997), where the defendant had failed to pay royalties to plaintiff for an entire three year period, the District Court denied plaintiff's request for rescission because there had been partial payment, explaining, "[t]he law is clear... that rescission is not an appropriate remedy in this case." *Id.* at 205. As New Paradigm has received roughly two-thirds of the agreed upon consideration, rescission is not appropriate.

plaint, Plaintiff has alleged the existence of a contract between itself and VIE; NEON's knowledge of this contract; NEON's intentional inducement of VIE to breach; as well as damages. (Compl.¶ 101–106). While Defendants are correct that there can be no liability for tortiously interfering with one's own contract, [*Koret, Inc. v. Christian Dior, S.A.* 161 A.D.2d 156, 554 N.Y.S.2d 867 (1990) (holding that only a stranger to a contract can be liable for tortious interference with that contract); *Kosson v. Algaze*, 203 A.D.2d 112, 610 N.Y.S.2d 227, 228 (1994), *aff'd*, 84 N.Y.2d 1019, 622 N.Y.S.2d 674, 646 N.E.2d 1101 (1995); *Mackie v. La Salle Indus., Inc.*, 92 A.D.2d 821, 460 N.Y.S.2d 313, 316 (1983) ], "Plaintiff's tortious interference claim is principally addressed to NEON's interference with the 1997 contract between VIE and New Paradigm prior to NEON's actual purchase of VIE's stock." (Pl.'s Mem. at 16). Defendant's argument focuses only on the time period after NEON had become a parent company to VIE.

Defendants' argument that any alleged interference with the Agreement between VIE and New Paradigm was "privileged" similarly is not persuasive. Defendants contend that "New York courts have repeatedly recognized the promotion of economic interests as a legitimate business purpose justifying interference with an existing contract even absent a formal relationship between the defendant and one of the parties to the contract." (Def.'s Mem. at 7). " '[O]ne who has a financial interest in the business of another is privileged to interfere with a contract between the other and a third party if his purpose is to protect his own interest and if he does not employ improper means.' " *Inn Chu Trading Co., Ltd. v. Sara Lee Corporation*, 810 F.Supp. 501, 505 (S.D.N.Y.1992) (quoting *Record Club of America Inc. v. United Artists Records, Inc.*, 611 F.Supp. 211, 217 (S.D.N.Y.1985)). Plaintiff, however, is arguing that NEON interfered with the contract "prior to NEON's actual purchase of VIE's stock," (Pl.'s Mem. at 16), and thus, prior to its acquisition of a financial interest in the business of VIE.

In *Si Stern v. MDS Acquisition Corporation*, 1991 WL 156225 (S.D.N.Y. Aug.8, 1991), where plaintiffs sought damages against TA Associates for inducing the breach of an agreement between plaintiffs and a third corporation, MDS Acquisition Corporation, the jury reached a verdict in favor of the plaintiffs. The defendants moved for judgment notwithstanding the verdict on the ground that TA had acquired 75% of the stock of MDS and, "any interference by TA with the contract between plaintiffs and MDS was privileged by virtue of TA's economic interest in MDS." *Id.* at *1. The Court explained that privilege to interfere with a contract exists when one has "an economic stake in the business of another," *id.* at *2, and that an individual "may interfere with a contract that the other business has a with a third person if the purpose is to protect the individual's own stake." *Id.* at *3 (quoting *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 63 (2d Cir.1988)). However, the Court declined to disturb the verdict, despite TA's stock acquisition, on the grounds that "the jury might have determined that the inducement to breach occurred prior to TA's acquisition of an interest in MDS." *Id.* at *4.

The Court is not convinced at this stage that Plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99.

## D. Punitive Damages (Fifth Claim)

Plaintiff's Fifth claim asserts entitlement to punitive damages in an amount "presently believed to be substantially in excess of $10,000,000." (Compl.¶ 117). Plaintiff bases its punitive damages request on: (1) "NEON's egregious breach of its contractual responsibilities;" (2) "NEON's willful and knowing misrepresentation with the intent to deceive New Paradigm;" (3) "NEON's surreptitious ef-

forts at selling products which have the identical, virtually identical, or substantially similar source code... as Copernicus;" and (4) "the harm that plaintiff New Paradigm's shareholders have experienced as a result of" NEON's breach. (*Id.* ¶ 117). Defendants respond that if all that is required to warrant punitive damages "are allegations that the breach was 'willful' and 'intentional,' then the strict standard applied to the circumstances under which punitive damages are available is completely eviscerated." (Def.'s Reply at 11). Therefore, Defendants argue, Plaintiff's punitive damages request should be dismissed.

In a breach of contract action where a contractor sought punitive damages against a subcontractor, United States District Court Judge Charles S. Haight explained that, "under New York law, the purpose of punitive damages is 'not to remedy private wrongs but to vindicate public rights.'" *W.S.A., Inc. v. ACA Corporation,* 1998 WL 635536 (S.D.N.Y. Sept.15, 1998) (quoting *Rocanova v. Equitable Life Assurance Society,* 83 N.Y.2d 603, 612, 612 N.Y.S.2d 339, 634 N.E.2d 940 (1994)). "[A] private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." *Rocanova,* N.Y.2d at 612; *see also Parke–Hayden, Inc. v. Loews Theatre Management Corp.,* 789 F.Supp. 1257 (S.D.N.Y.1992) ("New York Courts, the Second Circuit and courts within this district are virtually unanimous that punitive damages may not be awarded in breach of contract cases, unless the wrong is aimed at the public generally."). In addition, the wrongful conduct must "evince a high degree of moral turpitude and demonstrate such wanton dishonesty as to imply a criminal indifference to civil obligations." *Airlines Reporting Corp. v. Aero Voyagers, Inc.,* 721 F.Supp. 579, 585 (S.D.N.Y.1989).

Plaintiff alleges that Defendant NEON has been "surreptitiously" selling software products which "have the identical, virtually identical, or substantially similar source code, functionality or methodology as Copernicus but without attribution and without payment of the royalty." (Compl.¶ 117). Plaintiff also claims that NEON has made "knowing and willful misrepresentations with the intent to deceive New Paradigm on the subject of listing Copernicus as a product for sale or license." (*Id.*). Arguing that any "public wrong" requirement is satisfied by the fact that "New Paradigm is a publicly traded company," (Pl.'s Mem. at 23), Plaintiff alleges harm to "New Paradigm's shareholders... as a result of a lower share price than would otherwise be the case but for the foregoing breaches by defendant NEON...." (*Id.*).

Whether NEON's actions have in fact infringed on public rights, or have been so egregious as to "evince a high degree of moral turpitude" or to "demonstrate such wanton dishonesty as to imply criminal indifference to civil obligations," *Airlines Reporting Corp.,* 721 F.Supp. at 585, are issues of fact to be litigated in this lawsuit. The Court is not prepared at this early stage to conclude that Plaintiff can prove no set of facts in support of this claim which would entitle it to relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

## IV. Conclusion

For the reasons stated above, the Court grants Defendants' motion to dismiss with respect to the fourth and sixth causes of action and denies Defendants' motion to dismiss with respect to the third cause of action and the fifth cause of action insofar as it seeks punitive damages.