**OVERVIEW BOOKS, LLC, and Lev Tsitrin, Plaintiffs,**

v.

**The UNITED STATES of America, The Library of Congress, and James H. Billington as The Librarian of Congress, Defendants.**

No. 08–CV–1842 (ENV)(CLP).

United States District Court, E.D. New York.

Dec. 13, 2010.

See also 72 Fed.Cl. 37.

412

Norman Julius Finkelshteyn, Norman J. Finkelshteyn, Esq., Brooklyn, NY, for Plaintiffs.

John Vagelatos, United States Attorney's Office, Brooklyn, NY, for Defendants.

VITALIANO, District Judge.

Plaintiffs Overview Books LLC and Lev Tsitrin, bring this action against defendants, the United States of America, the Library of Congress, and James H. Billington in his capacity as the Librarian of

Congress, alleging violations of the First and Fifth Amendments. Defendants now move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The crux of the motion involves an analysis of the related preclusion doctrines of *res judicata* and collateral estoppel, which serve the important purposes of preserving the finality of judicial determinations and conserving resources—judicial and litigant alike. Appropriate application of the dual doctrines also promotes respect for the law, engenders public confidence in the adjudicatory process, and protects litigants "from vexatious and repetitive litigation." *Nabisco, Inc. v. Amtech Int'l, Inc.*, 95–CV–9699, 2000 WL 35854, at *5, 2000 U.S. Dist. LEXIS 305, at *13 (S.D.N.Y. Jan. 18, 2000). For these and the reasons that follow, the motion to dismiss is granted.

## I. BACKGROUND

### A. Cataloging in Publication Program

The following allegations are drawn from the text of the complaint and are considered true for purposes of the current motion.

This case centers on the Cataloging in Publication ("CIP") program administered by the Library of Congress, which, as its name implies, is an agency of the legislative branch of the United States government. *See* 2 U.S.C. §§ 131–185. Through the CIP program, the Library prepares a bibliographical record for books that have not yet been published. (Compl. ¶ 5.) The Library staff completes descriptive cataloging, assigns subject headings, assigns full Library of Congress and Dewey (decimal cataloging) classification numbers, and assigns a Library of Congress control number. (*Id.* ¶ 6.) Books that are a part of the CIP program are included in a searchable database routinely used by libraries at large and book vendors to search for

new titles. (*Id.* ¶ 7.) Additionally, prior to a book's publication, the Library staff distributes a machine-readable record of the CIP data to various libraries, book vendors, and bibliographical utilities worldwide to notify them about the upcoming publication. (*Id.* ¶ 8.)

After the book is published, the publisher forwards the book to the Library's CIP Division and the Library staff reviews the catalog record; makes the necessary changes to the title, subtitle, series, author, or subject; adds additional data elements to the catalog record; and again distributes the record in the same fashion as it did pre-publication. (*Id.* ¶¶ 9–10.) The CIP data is printed on the copyright page of the book. (*Id.* ¶ 5.)

The CIP program is administered solely by the Library of Congress and the services are provided free of charge for works the Library deems to qualify. (*Id.* ¶ 12.) For a publication to be included in the CIP program, the publisher must have previously published books from at least three different authors and the author must not have paid for or subsidized publication of the book in any way. (*Id.* ¶ 15.) These criteria are strictly followed and no exceptions are permitted. (*Id.* ¶ 16.) Publishers who do not meet the Library's requirements may pursue an alternate registration option known as the Preassigned Control Number ("PCN"). (*Id.* ¶ 21.) Under the PCN program, books are not assigned searchable keywords and the records are not distributed through the same channels used for books accepted under the CIP program. (*Id.* ¶¶ 23–24.) As a result, libraries, book vendors, and other bibliographical utilities are not made aware of the upcoming PCN-publications as they are of the publications covered by the CIP program. (*Id.*)

**B.** *Plaintiffs' Submission*

Overview Books is a limited liability book publishing company formed and operated in Brooklyn, New York. (*Id.* ¶ 2.) Lev Tsitrin wrote "The Pitfall of Truth," which he authored under the pseudonym Vel Nirtist and was published by Overview Books in 2005. (*Id.* ¶ 3.) In September 2004, Overview Books applied for a CIP record for Tsitrin's work. (*Id.* ¶ 18.) Upon a finding of a failure to meet CIP eligibility standards, the application was denied. (*Id.* ¶ 20.) It is uncontested that Overview Books was formed by Tsitrin and the book was the first and only work that it ever published. (*Id.*)

**C.** *Procedural History*

Plaintiffs originally filed a complaint in the United States Court of Federal Claims on July 22, 2005. It formally advanced claims pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Takings Clause of the Fifth Amendment. The only defendant named was the United States and the factual allegations raised are identical to those raised presently. Plaintiffs requested monetary damages and an order from the court requiring the Library of Congress to alter the CIP program eligibility requirements. *Overview Books v. United States,* 72 Fed.Cl. 37, 41 (Cl.Ct.2006). Specifically, they sought to eliminate the self-publishing and three-author requirements outlined above. *Id.* The Court of Federal Claims granted the government's motion to dismiss and denied plaintiffs' cross-motion for summary judgment. *Id.* at 46. The court declined to dismiss the complaint under Rule 12(b)(1) finding that plaintiff's allegations, "though novel," were not "patently frivolous" and were "grounded on a Constitutional provision that mandates compensation." *Id.* at 42. It analyzed plaintiffs' claims under the Takings Clause of the Fifth Amendment but found

that "the Library's restrictions on participation in the CIP program [did not] constitute[ ] a regulatory taking." *Id.* at 44. It further found that plaintiffs had not "established a 'legitimate claim of entitlement' to participate in the CIP program." *Id.* at 46 (internal citations omitted).

Plaintiffs appealed the court's dismissal and on August 17, 2007, the Federal Circuit summarily affirmed. *See Overview Books v. United States,* 232 Fed.Appx. 989 (Fed.Cir.2007). Plaintiffs' petition for a rehearing *en banc* was denied on October 22, 2007. *Id.* They subsequently petitioned for a writ of certiorari, which the Supreme Court denied on March 17, 2008. *See Overview Books v. United States,* 552 U.S. 1259, 128 S.Ct. 1670, 170 L.Ed.2d 357 (2008). Plaintiffs filed the instant action on May 6, 2008. Defendants moved to dismiss that complaint pursuant to Rules 12(b)(1) and 12(b)(6).

## II. *DISCUSSION*

The complaint asserts claims against the United States of America, the Library of Congress, and James H. Billington as the Librarian of Congress, pursuant to the First and Fifth Amendments of the United States Constitution.

### A. *Motion to Dismiss Standard*

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." This rule does not compel a litigant to supply "detailed factual allegations" in support of his claims, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "A pleading that offers 'labels and conclusions' … will not

do." *Id.* (*quoting Twombly,* 550 U.S. at 555, 127 S.Ct. 1955); *see also In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir.2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal,* 129 S.Ct. at 1949 (*quoting Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

To survive a Rule 12(b) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (*quoting Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotations omitted); *see Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (interpreting *Twombly* to require a "plausibility standard" that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible") (emphasis omitted), *rev'd on other grounds,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). At the same time, on a Rule 12(b)(6) motion, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir.2008).

The court may only consider the pleading itself, documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995).

"When a defendant raises the affirmative defense of res judicata or collateral estoppel 'and it is clear from the face of the complaint ... that the plaintiff's claims are barred as a matter of law,' dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate." *Austin v. Downs, Rachlin & Martin*, 270 Fed.Appx. 52, 53 (2d Cir.2008) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86–87 (2d Cir. 2000)). Additionally, "the party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment." *Id.* (citing *BBS Norwalk One, Inc. v. Raccolta, Inc.*, 117 F.3d 674, 677 (2d Cir.1997)).

## B. *Res Judicata*

Defendants argue that all claims alleged in the complaint should be dismissed pursuant to Rule 12(b)(6) as they are barred by *res judicata* or the collateral estoppel effects of the decision of the United States Court of Federal Claims. Plaintiffs, of course, demur, contending that their claims before this Court are unencumbered by any previous judgment.

The doctrine of *res judicata* is a bedrock principle of our legal system that "applies to repetitious suits involving the same cause of action." *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). As the Supreme Court explained, "it rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations." *Id.* Traditionally, *res judicata* proclaims that "a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand." *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001) (internal quotation omitted). Moreover, it even "prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was [actually] raised." *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir.1985) (internal citation omitted). *See also Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 594 (2d Cir.1991) ("Res judicata, or claim preclusion, precludes a litigant from advancing in a new action all claims or defenses that were or could have been raised in a prior proceeding in which the same parties or their privies were involved and that resulted in a judgment on the merits."); *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir.1992) (same); *N.L.R.B. v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983) (same). However, *res judicata* is, as plaintiffs say, inapplicable where the initial forum was not empowered to grant the full measure of relief available in the subsequent lawsuit. *See Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir.1994).

The Second Circuit has enumerated four conditions to be analyzed when determining whether *res judicata* applies: (1) the earlier decision was a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the same parties or their privies were involved; and (4) the decision involved the same cause of action. *See In re Teltronics Services, Inc.*, 762 F.2d 185, 190 (2d Cir.1985) (citing *Herendeen v. Champion International Corp.*, 525 F.2d 130, 133 (2d Cir.1975)). All four conditions must be met for claim preclusion to apply and, here, the Court finds that all four have been met.

### 1. *Final Judgment on the Merits*

The first requirement that must be met for claim preclusion to apply is that the earlier decision be a final adjudication on the merits. It is well-established that "[f]or *res judicata* purposes, a Rule

12(b)(6) dismissal is deemed to be a judgment on the merits." *Ramirez v. Brooklyn Aids Task Force,* 175 F.R.D. 423, 426 (E.D.N.Y.1997) (citing *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 399, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981); *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187–88 (2d Cir.1996); *Exch. Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976), *modified on other grounds,* 726 F.2d 930 (2d Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 253, 83 L.Ed.2d 190 (1984)). In plaintiff's prior action, the Court of Federal Claims granted defendant's motion to dismiss pursuant to Rule 12(b)(6), satisfying the first requirement.

### 2. *Court of Competent Jurisdiction*

 It is clear that "a court's adjudication is conclusive only if it had power to pass on the merits of the action...." *Stone v. Williams,* 970 F.2d 1043, 1057 (2d Cir.1992). A party attacking the preclusive effect of a judgment may therefore "collaterally attack the subject matter or *in personam* jurisdiction of the court rendering [the] judgment." *Id.* Here, plaintiffs mistakenly contend that the Court of Federal Claims had no jurisdiction to decide their First Amendment claim, and in fact dismissed the claim for lack of subject matter jurisdiction. However, despite plaintiffs' creative arguments to the contrary, the Court finds that the Court of Claims had jurisdiction to pass on the merits of the claim, and did in fact do so.

Plaintiffs' argument that the court of prior decision lacked jurisdiction seems to be predominantly based on one statement taken entirely out of context. In its opinion, dated July 24, 2006, the Court of Claims stated:

> [P]laintiffs make numerous references to their rights to free expression of ideas under the First Amendment of the Con-

stitution. However, with respect to jurisdiction under the Tucker Act, the Federal Circuit has determined that the First Amendment, standing alone, does not expressly command the payment of money and may not serve as a jurisdictional predicate for claims in this court. Therefore, to the extent that plaintiffs invoke the First Amendment as a basis for their claims, this court is without jurisdiction to consider them.

*Overview Books,* 72 Fed.Cl. at 41 (internal citations omitted). What plaintiffs fail to acknowledge is what follows in the court's opinion:

> Alleged violations of the First Amendment may only be considered collaterally by this court when making a determination whether payment is due under a money-mandating statute, e.g., back pay. Consequently, the court must address whether there is any independent basis for bringing a monetary claim against the federal government.

*Id.* (internal citations omitted). Restated simply, if the Court of Federal Claims finds a basis independent of the First Amendment for bringing a monetary claim (e.g., the Takings Clause of the Fifth Amendment), the court then has collateral jurisdiction to consider a plaintiff's First Amendment claim within the context of considering the independent claim. And in fact, that is precisely what the court did in this case when it went on to find that it did have jurisdiction to hear plaintiffs' claims under the Takings Clause of the Fifth Amendment. Squarely, the court stated that "[a] claim for compensation pursuant to the Takings Clause of the Fifth Amendment constitutes a money-mandating provision sufficient to invoke the jurisdiction of this court.... It would therefore be inappropriate to dismiss plaintiffs' case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)." *Id.* at 41–42. In

making this determination, the court also effectively recognized jurisdiction to decide plaintiffs' First Amendment claim collaterally. More than that, the court exercised its jurisdiction to expressly address the merits of that claim:

> [Plaintiffs] merely assert that the program must accept publications from all authors because to do otherwise would be to abridge the First Amendment rights of plaintiffs and all others who are similarly situated.... None of the conditions for participation in the CIP Program appears to have anything to do with conduct that would be considered expressive in nature.... The program is a benefit to authors whose books are placed in the program but not a burden to the expressive rights of those whose books do not qualify. Nothing in the CIP program suggests that the Library is attempting to advance a certain viewpoint or idea.
>
> Plaintiffs additionally imply that the Library, through the CIP program, has created a forum for speech from which they may not be excluded. This implied factual premise is mistaken. The CIP program was not created for the purpose of creating a forum for speech, but rather for the efficient cataloging of books most likely to be acquired by libraries.

*See id.* at 44 (internal citations omitted).

In sum, given the clear, enveloping, and definite finding in its decision to the contrary, plaintiffs' arguments that the Court of Claims lacked jurisdiction to consider their First Amendment claims are wholly meritless. The second claim preclusion requirement is satisfied.[1]

### 3. *Same Parties Involved*

■ The third requirement is that the two claims involve the same parties or those in privity with them. Plaintiffs contend that this requirement is not met because, in addition to the United States, they are suing two new defendants in this Court, namely, the Library of Congress and James H. Billington in his official capacity as the Librarian of Congress. Their contention is flawed, however, in that even with the two additional parties, plaintiffs are nevertheless still only suing "the United States government or those in privity with it in both cases." *Bloomquist v. Brady,* 894 F.Supp. 108, 114 (W.D.N.Y. 1995).

■ "Contemporary courts have broadly construed the concept of privity, far beyond its literal and historical meaning, to include any situation in which the 'relationship between the parties is sufficiently close to support preclusion.'" *Nabisco, Inc. v. Amtech Int'l, Inc.,* 2000 WL 35854, at *6, 2000 U.S. Dist. LEXIS 305, at *18 (quoting *Amalgamated Sugar Co., LLC v. NL Indus., Inc.,* 825 F.2d 634, 640 (2d Cir.1987)). More on point in this case, "government officials sued in their official capacities are generally considered to be in privity with the governmental entity that they serve." *Waldman v. Village of Kiryas Joel,* 39 F.Supp.2d 370, 382 (S.D.N.Y. 1999) (citing *Micklus v. Greer,* 705 F.2d 314, 317 (8th Cir.1983); *Bloomquist,* 894 F.Supp. at 114). An agency of the United States is similarly considered to be the

---

1. Furthermore, the decision of the Court of Claims unequivocally determined the court had jurisdiction to entertain plaintiffs' First Amendment claim collaterally to its jurisdiction covering the Fifth Amendment claim. Overview Books and Tsitrin make no legal argument whatsoever to the contrary. Therefore, even if the Court of Claims did not decide their First Amendment claim, such a claim still could have been brought and decided. As a result, in such circumstances, *res judicata* bars the claim anyway.

same party as the United States or in privity with it for *res judicata* purposes. *See Jones v. Department of the Army Bd. for Correction of Military Records,* 99–CV–4423, 2000 WL 890377, at *3, 2000 U.S. Dist. LEXIS 9201, at *11–12 (S.D.N.Y. June 30, 2000) (a branch of the Army, as a department of an agency of the United States found to be in privity with the United States). *See also Sunshine Coal Co. v. Adkins,* 310 U.S. 381, 402–403, 60 S.Ct. 907, 917, 84 L.Ed. 1263 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government."); *Mathis v. Laird,* 457 F.2d 926, 927 (5th Cir.1972) (*res judicata* bars former soldier's suit against Secretary of Defense for correction of military records, despite fact his prior suit named United States as defendant); *Marshall v. Nat'l Ass'n of Letter Carriers Br. 36,* 03–CV–1361, 2003 WL 22519869, at *8, 2003 U.S. Dist. LEXIS, at *9 (S.D.N.Y. Nov. 7, 2003) (National Labor Relations Board, Equal Employment Opportunity Commission, and employees of these agencies to be in privity with United States Postal Service and letter carriers union named in prior actions involving "claims that arose out of the same set of events," citing that National Labor Relations Board, Equal Employment Opportunity Commission, and United States Postal Service are all government agencies).

Here, the new defendants are an agency and an employee of the United States government, which certainly presents a "sufficiently close relationship" establishing privity, given, in particular, that plaintiffs are identical in both cases and the claims arise out of the same set of events.[2] "Res judicata operates to preclude claims, rather than particular configurations of parties; [plaintiffs'] addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle him to revive the previously dismissed claims." *Cameron v. Church,* 253 F.Supp.2d 611, 623 (S.D.N.Y.2003). Consequently, the preclusive effect of the Court of Claim's decision applies to protect all current defendants, and the third requirement for res *judicata* is satisfied.

### 4. *Same Cause of Action*

The test for determining whether causes of action are the same for *res judicata* purposes has been articulated by the Second Circuit as inquiring

> whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action, whether the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the essential facts and issues in the second were present in the first.

*Herendeen,* 525 F.2d at 134 (footnotes omitted); *see also Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 727 (2d Cir. 1981) (same). However, courts frequently

---

**2.** A government official sued in his individual capacity is generally not considered to be in privity with the United States government. *See Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985). However, the individual defendant in this action was named in his official capacity as Librarian of Congress. There are no alle-

gations whatsoever that Billington is being sued, or would support his being sued, outside the capacity of his employment and so the Court assumes that plaintiffs' claims against him are only viable as official capacity claims. *El–Bey v. New York,* 464 F.Supp.2d 329, 334 (D.N.Y.2006).

"collapse the various criteria by emphasizing that 'the crucial element underlying all of these standards is the factual predicate of the several claims asserted. For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.'" *Ramirez*, 175 F.R.D. at 427 (quoting *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977)). *See also Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir.1992) ("It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [plaintiffs] chose to frame [their] complaint."), *cert. denied*, 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993); *Berlitz Schs. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir.1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata.").

 It is clear that the factual predicate of the claims asserted in this Court are not just "substantially" identical to those that were asserted before the Court of Claims, they are in fact entirely identical. Plaintiffs complain that "the Library of Congress rejected 'The Pitfall of Truth' solely because of eligibility requirements that (1) the submitted book not be published by its author and (2) that the book be published by a publisher who has published the books of three of more authors." (Compl. ¶ 20.) This claim is identical to the one before the Court of Claims that alleged "the Library of Congress rejected 'Pitfall of Truth' not because of any issues with the book but because one eligibility requirement for the CIP program is that the book be published by a publisher who has published the books of three or more authors." (Plaintiffs' Complaint, filed July 22, 2005, in the United States Court of Federal Claims, Exhibit A ¶ 16). Plaintiffs' argument that the current action involves a set of facts that "differ fundamentally from the facts before the Court of Claims" simply because a report published subsequent to the decision reveals that some librarians believe the inclusion of self-published books in the CIP would have a positive impact, (Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss at 18), is not only unpersuasive but it is completely unfounded in law. Simply put, the complaint filed in this Court is identical to that filed in the Court of Claims and it involves an identical set of facts. That there may be extrinsic evidence that some consumer libraries might favor a change in the CIP requirements set by the Library of Congress is totally irrelevant to a *res judicata* inquiry.

Even if this Court were to examine the other factors enumerated by the Second Circuit, specifically, whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action and whether the same evidence is necessary to maintain the second cause of action as was required in the first, it would be unavailing for plaintiffs. Plaintiffs' claims before this Court are grounded in the First and Fifth Amendments. These claims were adjudicated to be without merit by the Court of Claims and a different judgment by this Court would certainly impair the government's rights and interests vindicated by the Court of Claims' decision. Similarly, the evidence necessary to maintain the current action is identical to what was required in the action before the Court of Claims. As such, the Court concludes that the claims asserted in the prior proceeding are substantially identical to those asserted now, and thus barred by the doctrine of *res judicata.*

Since defendants have adequately demonstrated the presence of all four requirements necessary for a finding of *res judicata*, their motion to dismiss the complaint pursuant to Rule 12(b)(6) must be granted. Instructively, this is precisely the type of case where preclusion is necessary "not [as] a mere matter of practice or procedure inherited from a more technical time than ours, but [as a rule] of fundamental and substantial justice, of public policy and of private peace...." *Nabisco*, 2000 WL 35854, at *5, 2000 U.S. Dist. LEXIS 305, at *14 (internal quotation and citation omitted). The Court concludes that, here, *res judicata* requires that the valid final judgment of the Court of Claims, rendered on the merits, constitutes an absolute bar to the pending action between the same parties (and/or those in privity with them), upon the same claim or demand. *See Epperson*, 242 F.3d at 108.

### C. *Collateral Estoppel*

 A different legal theory requires the same result. Plaintiffs' claims are also barred by the related doctrine of collateral estoppel. When properly invoked, the doctrine of collateral estoppel (or issue as opposed to claim preclusion) bars a party from relitigating an issue decided against the party in a prior proceeding. *See Roe v. City of Waterbury*, 542 F.3d 31, 41 (2d Cir.2008). Collateral estoppel is grounded in the same policy considerations giving birth to *res judicata*; as a "general rule [it] is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination." *Southern P.R. Co. v. United States*, 168 U.S. 1, 49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). "[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based

on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

 The Second Circuit has enumerated a four-part test for determining whether collateral estoppel applies: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Austin*, 270 Fed.Appx. at 53–54 (internal quotations and citations omitted). *See also United States v. Hussein*, 178 F.3d 125, 129 (2d Cir.1999) (same) (citing *In re PCH Assocs.*, 949 F.2d at 593).

 Each factor is met in the case at bar. In the Court of Claims action, plaintiffs raised the identical issues, the issues were litigated and decided by the court on the merits, plaintiffs had ample opportunity to litigate the issue, and the conclusion was necessary to support a finding in favor of the United States, the prevailing party.

### 1. *Identity of Issue*

Obviously, finding *res judicata* applies, the Court also finds more than considerable overlap between the issues raised in the Court of Claims action and those which plaintiffs seek to raise in the instant case. In fact, the factual issues raised are entirely identical. Additionally, while the claims pleaded in the Court of Claims are not strictly speaking identical to the claims pleaded in this Court, they are essentially the same. In the Court of Claims, plaintiffs asserted that "the jurisdiction of this court over the herein controversy is based on the Tucker Act, 28 U.S.C. § 1491 and the takings clause of the Fifth Amendment of the U.S. Constitution." (Plaintiffs'

Complaint, filed July 22, 2005, in the United States Court of Federal Claims, Exhibit A ¶ 1). In the instant action, plaintiffs assert that "the jurisdiction of this court over the herein controversy is based on 28 U.S.C. § 1346 and the First and Fifth Amendment of the U.S. Constitution." (Compl. ¶ 1.) Plaintiffs' attempts to circumvent the obvious and central commonality of the two sets of claims fall flat; their claims as actually litigated are essentially identical. While the First Amendment issue was not raised as a separately pleaded claim in the prior case, as the Court of Claims noted, "[i]n support of their claims, plaintiffs [made] numerous references to their rights to free expression of ideas under the First Amendment of the Constitution." *Overview Books,* 72 Fed.Cl. at 41. As such, the court considered both the First Amendment and the Takings Clause of the Fifth Amendment when it dismissed plaintiffs' action. The issues controverted by the parties in the two cases are therefore identical.

### 2. *Actually Litigated and Decided*

And, of course as sketched above, the Court of Claims actually decided both the First and Fifth Amendment claims in the earlier action, finding that, even though the First Amendment "does not expressly command the payment of money and may not serve as a jurisdictional predicate for claims in [that] court," if there was an "independent basis for bringing a monetary claim against the federal government," the First Amendment claim would be considered. *Overview Books,* 72 Fed. Cl. at 41. That is precisely what the court did, deciding the Fifth Amendment and First Amendment claims adversely to plaintiffs.

### 3. *Full and Fair Opportunity to Litigate*

■ Plaintiffs also had a full and fair opportunity to litigate their claims in the Court of Claims. While "the party asserting issue preclusion bears the burden of showing that the identical issue was raised and necessarily decided in a previous proceeding ... the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Narumanchi v. Am. Home Assur. Co.,* 317 Fed.Appx. 56, 59 (2d Cir. 2009) (internal quotations and citations omitted). Plaintiffs have not come close to meeting that burden here. Clearly, their claims were fully litigated in the Court of Claims, after which they appealed to the Federal Circuit and petitioned for a writ of certiorari to the Supreme Court. There is simply no doubt that plaintiffs had a full and fair opportunity to litigate their claims.

### 4. *Necessary to a Valid and Final Judgment on the Merits*

■ "The rationale for the principle that preclusive effect will be given only to those findings that are necessary to a prior judgment is that 'a collateral issue, although it may be the subject of a finding, is less likely to receive close judicial attention and the parties may well have only limited incentive to litigate the issue fully since it is not determinative.'" *Hussein,* 178 F.3d at 129 (quoting *Commercial Assocs. v. Tilcon Gammino, Inc.,* 998 F.2d 1092, 1097 (1st Cir.1993) (emphasis suppressed)). Both the First and Fifth Amendment claims advanced by Overview Books and Tsitrin were necessary to the Court of Claims judgment. The court found that plaintiffs failed to state a claim under the Fifth Amendment as well as the First Amendment.

Since all four factors are present, collateral estoppel as well as *res judicata* prohibits plaintiffs from rechallenging the identical CIP program that they chal-

lenged before the Court of Claims.[3] In sum, plaintiffs' claims before this Court are barred by the twin doctrines of preclusion—claim and issue. They are dismissed pursuant to Rule 12(b)(6).

### III. *CONCLUSION*

For the reasons set forth above, defendants' motion is granted. The complaint is dismissed with prejudice pursuant to Rule 12(b)(6).

The Clerk of the Court is directed to enter judgment for defendants and close this case.

**SO ORDERED.**

---

**3.** It should also be noted that the presence of the additional defendants in this action does not preclude the court from applying issue preclusion. "Nonmutual collateral estoppel requires that the prior adverse decision bar [plaintiffs] from relitigating the previously decided issue against [the] new defendants." *Austin v. Downs, Rachlin & Martin*, 03–CV–204, 2003 WL 23273466, at *2, 2003 U.S. Dist. LEXIS 20556, at *5 (D.Vt.2003) (citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)). However, even under traditional collateral estoppel, plaintiffs would be barred from proceeding in light of the Court's prior finding that the additional defendants are in privity with the United States, the sole defendant in the previous action. *See supra*, Part II.B.3.