Sylvia **ROBINSON** et al., Plaintiffs,

v.

**SANCTUARY RECORD GROUPS, LTD. and Sanctuary Copyrights, Ltd.**, Defendants.

No. 03 Civ. 10235 (VM).

United States District Court, S.D. New York.

Nov. 2, 2011.

James P. Cinque, Cinque & Cinque, Oren J. Warshavsky, Baker & Hostetler LLP, New York City, NY, for Plaintiffs.

Andrew Harrison Bart, Jenner & Block LLP, New York, NY, for Defendant Sanctuary Copyrights, Ltd.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiffs Sylvia Robinson, Sylvia, Inc., Joseph Robinson, Jr., Henry Jackson, Jr., Michael Wright, George Kerr, Wesaline Music, Jonathan Williams, Clifton Chase, and Edward Fletcher (collectively, "Plaintiffs") are individuals and entities associated with various well-known musical groups, including "The Sugar Hill Gang," "Grand Master Flash," "The Wall Street Mob," "The Furious Five," and "Grand Master Melle Mel." Plaintiffs sued record companies Sanctuary Record Groups, Ltd. and Sanctuary Copyrights, Ltd. (collectively, "Defendants") for rescission of certain musical recording agreements ("Recording Agreements"). This case is on remand from the Second Circuit Court of Appeals, which vacated entry of default judgment against the Defendants on July 1, 2010. In November 2010, Defendants sought a pre-motion conference to discuss Defendants' proposed motion for summary judgment. As explained below, the parties submitted letter-briefs on the discrete issue of law of the case. By–Decision and Order dated February 1, 2011 (the "2011 Order"), the Court deemed Defendants' letter-brief dated December 10, 2010 (the "Defendants' December 10 Letter") a motion for summary judgment, and directed Plaintiffs to show cause as to why the Court should not (1) reaffirm its prior rulings finding that Plaintiffs are not entitled to rescission damages and (2) grant the Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"). For the reasons discussed below, Defendants' motion for summary judgment is GRANTED.

## I. BACKGROUND [1]

Plaintiffs commenced this action on December 29, 2003, seeking rescission of the

---

1. The Court derives the factual summary from the following opinions and documents, and any exhibits and declarations attached thereto: (1) the 2011 Order, see Robinson v. Sanctuary Record Grps., Ltd., 763 F.Supp.2d 629 (S.D.N.Y.2011); (2) the Second Circuit Court of Appeals' Summary Order, see Robinson v. Sanctuary Music, 383 Fed.Appx. 54 (2d Cir. 2010); (3) the Court's Decision and Order dated April 16, 2008, see Robinson v. Sanctuary Record Grps., Ltd., 249 F.R.D. 144 (S.D.N.Y.2008); (4) the Court's Decision and Order dated March 25, 2008, see Robinson v. Sanctuary Record Grps., Ltd., 542 F.Supp.2d 284 (S.D.N.Y.2008); (5) the Defendants' let-ter-briefs dated December 10, 2010 and January 7, 2011; (6) Plaintiffs' letter-brief dated December 30, 2010; (7) Plaintiffs' Memorandum of Points and Authorities In Opposition to Order to Show Cause; (8) Memorandum of Law in Support of Defendants' Motion for Summary Judgment and This Court's Decision and Order of February 1, 2011; (9) Plaintiffs' Reply Memorandum of Points and Authorities In Opposition to Order to Show Cause ("Plaintiffs' Reply"); and (10) the declarations of Plaintiffs' lawyer James P. Cinque. Except where specifically referenced, no further citation to these sources will be made.

Recording Agreements and incidental damages flowing from exploitation of Plaintiffs' musical recordings or, in the alternative, an order directing "Sanctuary to account and pay [P]laintiffs all royalties due to them pursuant to the terms of the [Recording] Agreements." (Compl. ¶ 40.) After Defendants failed to file an answer or otherwise move with respect to Plaintiffs' complaint, a default judgment was entered against Defendants on May 28, 2004 by Order of the Honorable Richard Owen (the "Default Judgment"). Judge Owen later referred the matter to Magistrate Judge Gabriel W. Gorenstein for an inquest on damages. On March 30, 2006, following a hearing on damages, Magistrate Judge Gorenstein issued a Report and Recommendation (the "Report") concluding that Plaintiffs should not be awarded any damages because they failed to establish sufficient grounds for an award. After receiving Plaintiffs' objections to the Report, Judge Owen held a bench trial from May 29, 2007 through June 1, 2007 on the sole issue of damages (the "Trial").

Upon review of the Report, the Trial, and factual record, this Court issued a Decision and Order dated March 24, 2008 (the "March 2008 Order") entering the Default Judgment and finding that Plaintiffs "failed to present any reliable evidence upon which the Court can calculate damages" and thus Plaintiffs "should not be awarded any damages pursuant to the Default Judgment." *Robinson*, 542 F.Supp.2d at 294. Subsequently, on April 3, 2008, Defendants filed a Notice of Motion to amend the March 2008 Order, or in the alternative, to vacate the entry of the Default Judgment under Rules 55(c) and 60(a) of the Federal Rules of Civil Procedure. By Decision and Order dated April 16, 2008 (the "April 2008 Order"), this Court denied Defendants' motion. Defendants appealed the denial of their motion

to vacate the entry of default Judgment, and Plaintiffs cross-appealed the findings on damages.

On July 1, 2010, by Summary Order ("Summary Order"), the Second Circuit vacated the entry of default judgment and remanded the case to this Court for further proceedings. *See Robinson*, 383 Fed. Appx. 54. The Second Circuit did not reach the issue of damages. *See id.* at 57.

Following the issuance of the Second Circuit's mandate, by letter dated November 18, 2010, Defendants requested a premotion conference to discuss their proposed motion for summary judgment. On November 23, 2010, Plaintiffs submitted a letter opposing the proposed motion for summary judgment. During a telephonic conference on November 23, 2010, the Court directed the parties to submit letter-briefs addressing the issue of what effect the Second Circuit's remand had on the existing court rulings on the issue of damages.

In Defendants' December 10 Letter, they argued that the existing court rulings on damages constitute law of the case. Plaintiffs responded by letter dated December 30, 2010 ("Plaintiffs' December 30 Letter"), contending that because the issue of damages was not reviewed by the Second Circuit, law of the case should not bar Plaintiffs from re-litigating the issue of damages on remand. Plaintiffs also argued that even if the law of the case were applicable to the claim for damages stemming from rescission, it should not bar their claim for rescission or their alternative claim for compensatory damages. Defendants replied by letter dated January 7, 2011.

In the 2011 Order, the Court ruled that a finding of the district court that was properly challenged on appeal but not expressly or implicitly addressed by an ap-

pellate court remains law of the case. Accordingly, the Court found that its prior refusal to award damages for rescission remained law of the case. The Court also made preliminary findings rejecting Plaintiffs' arguments that they should be allowed to pursue rescission or compensatory damages (i.e., royalties owed) on remand. The Court directed the Plaintiffs to show cause as to why the Court should not reaffirm its prior rulings on damages or otherwise grant the Defendants' motion for summary judgment.

In their briefs responsive to the Court's 2011 Order, Plaintiffs make three arguments as to why the Court should not reaffirm its prior damages rulings or grant summary judgment. First, Plaintiffs again argue that the Court's prior rulings on damages are not law of the case. Second, Plaintiffs argue that regardless of whether law of the case forecloses rescission damages, rescission is available as a remedy for non-payment of royalties under *Nolan v. Sam Fox Publ'g Co.*, 499 F.2d 1394 (2d Cir.1974), and a Ninth Circuit decision, *Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir.1998). And third, Plaintiffs argue that their alternative claim for breach of contract is not barred by law of the case because it was never litigated.

## II. *DISCUSSION*

### A. *SUMMARY JUDGMENT STANDARD*

In connection with a Rule 56 motion, summary judgment is appropriate "where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, 'there is no genuine issue as to any material fact and ... the movant is

entitled to judgment as a matter of law.' " *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir.2009) (*quoting* Fed.R.Civ.P. 56). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) (internal quotations omitted). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir.1994). The party opposing summary judgment must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact; the opposing party cannot defeat summary judgment by relying on allegations in the complaint, conclusory statements, or mere assertions that affidavits supporting the motion are credible. *See Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir.1996).

### B. *LAW OF THE CASE*

Plaintiffs, without presenting any new legal arguments, challenge this Court's holding in the 2011 Order that the prior rulings on damages are law of the case.[2] The 2011 Order is consistent with *Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir.1991), which is instructive because its procedural history resembles that of this case. In *In re PCH Assocs.*, the bankruptcy judge found that the parties were in a joint venture, and the district court affirmed. On appeal, the Second Circuit did not address the issue of

---

**2.** Plaintiffs again cite *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892 (2d Cir.1997), which this Court already examined and found inapplicable.

joint venture, and on remand the lower courts concluded that the prior finding of joint venture remained law of the case. On appeal for the second time, the Second Circuit confirmed the lower courts' decision regarding law of the case: "it was well within the discretion of the bankruptcy court and the district court to have concluded that the prior determination, that the relationship between PCH and Liona was that of a joint venture, constituted the law of the case and should not have been disturbed." *In re PCH Assocs.*, 949 F.2d at 592–93. Since the purpose of the law of the case doctrine is to " 'maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit,' " *Id.* at 592 (*quoting* 18 C. Wright, A. Miller & E. Cooper, *Federal Procedure & Practice* § 4478, at 788 (1981)), the Court declines to revisit its ruling on law of the case or the underlying damages rulings.

## C. RESCISSION

The law of the case also prevents Plaintiffs from seeking rescission damages at this stage of the litigation. However, the inability of Plaintiffs to prove damages incident to rescission does not foreclose the availability of rescission itself.

> 'A rescission is an avoidance of a transaction. Rescission will normally be accompanied by restitution on both sides. Rescission is thus less a remedy and more a matter of conceptual apparatus that leads to the remedy: the contract is being unmade, so restoration of benefits received under the contract seems to follow.'

*United States ex rel. Taylor v. Gabelli*, No. 03 Civ. 8762, 2005 WL 2978921, at *5 n. 10 (S.D.N.Y. Nov. 4, 2005) (*quoting* Dan B. Dobbs, *Law of Remedies: Damages, Equity, Restitution* § 4.3(6), at 414 (2d ed. 1993)). It follows that rescission, which is the avoidance of a contract, could in theory occur without damages, provided that the law permits rescission in that instance.

■■■ "Under New York law, [r]escission is an extraordinary remedy, appropriate only when the breach is found to be material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract." *Krumme v. West-Point Stevens, Inc.*, 238 F.3d 133, 143 (2d Cir.2000) (internal quotation marks omitted). Rescission is used as a remedy in limited circumstances: fraud in the inducement of the contract, failure of consideration, an inability to perform the contract after it is made, or substantial breach. *See New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F.Supp.2d 325, 329 (S.D.N.Y.2000). As well, "rescission is an equitable remedy which will not be granted unless Plaintiffs lack an adequate remedy at law." *Id.* (internal quotation marks omitted).

■■■ In this Circuit, contracts may be rescinded for nonpayment of royalties. *Nolan*, 499 F.2d at 1399. However, "a contract assigning rights in a musical composition cannot be rescinded for non-payment of royalties unless the failure to pay royalties is total." *Cafferty v. Scotti Bros. Records, Inc.*, 969 F.Supp. 193, 205 (S.D.N.Y.1997) (*citing Nolan*, 499 F.2d 1394); *see Nolan*, 499 F.2d at 1399 (affirming dismissal of rescission claim where defendant had paid twenty-six percent of royalties due). In *Cafferty*, the plaintiff sought rescission of recording agreements, some in effect since 1982, for a failure to pay royalties over a three-year period. Since the defendants had partially paid the royalties due, the Court granted summary judgment dismissing Cafferty's claim for rescission. *Id.*

■ As in *Cafferty*, rescission is not an appropriate remedy here. Most of the interrelated Recording Agreements which Plaintiffs seek to rescind have been in effect since the 1970s and 1980s. However, it is undisputed that there was a non-payment of royalties only for what Plaintiffs term "Foreign Rights," and only since 1995. (*See* Compl. ¶¶ 13–26, 32 ("Sanctuary has knowingly and willfully failed to remit any accountings or payments since May 31, 1995")). The record contains no evidence, and Plaintiffs do not argue, that Defendants failed to pay royalties prior to 1995 or otherwise failed to perform their duties under the Recording Agreements prior to that date.[3] Moreover, Plaintiffs do not assert, and provide no evidence indicating, that Defendants did not pay royalties to for exploitation of the master recordings in countries excluded from the definition of "Foreign Rights," i.e., North America, South America, the Caribbean and Japan. *See* Compl. ¶ 28.

Plaintiffs argue that the provisions assigning "Foreign Rights" are divisible, and that divisible contracts are rescindable. Regardless of whether the law allows rescission of divisible contracts, Plaintiffs have offered no facts indicating that the parties intended the Recording Agreements to be divisible. *See Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd. (In re Balfour MacLaine Int'l Ltd.)*, 85 F.3d 68, 81 (2d Cir.1996) ("the severability of a contract is a question of the parties' intent"). Plaintiffs argue that paragraphs 27, 28, and 29 of the Complaint demonstrate the divisibility of the "Foreign Rights" provision, but those paragraphs contain only conclusory allegations that "Foreign Rights" are "independent," "divisible assets," and that "all the parties have intended to treat, and have in fact treated the exploitation of the Foreign Rights as separate and distinct." (Compl. ¶¶ 27, 28, 29). These allegations are not sufficient to defeat a motion for summary judgment. *See Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir.2003) ("Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact.") (internal quotation marks omitted). In sum, Plaintiffs are attempting to rescind multiple, long-standing contracts because of partial non-payment of royalties. This does not fulfill the Second Circuit's requirement of total non-payment under *Nolan*.

As the Court recognized in its 2011 Order, the alleged partial non-payment of royalties would be more appropriately remedied by a legal, rather than equitable remedy. Plaintiffs do not argue, and indicate no facts suggesting, that monetary damages would be impossible or inadequate. To the contrary, Plaintiffs insist that it would be possible to "identify and calculate" the royalties owed to them, and Plaintiffs' attorney has submitted a declaration to that effect. (*See* Plaintiffs' Reply, at 6) Crediting Plaintiffs' assertions regarding the availability of monetary damages, and in light of Plaintiffs' failure to present any facts showing a total non-payment of royalties, the Court finds that no reasonable jury would conclude that Plaintiffs are entitled to rescission.

---

**3.** In fact, Defendants were not even responsible for payment of royalties prior to 1995, when they were assigned the "Foreign Rights" by Rhino Records, Inc. ("Rhino"), a party to the Recording Agreements not joined in this suit. (*See* Compl. ¶¶ 13–28) Rescission of the Recording Agreements would be inappropriate because it would adversely affect the rights of non-party Rhino. *See Tudor v. Riposanu*, 93 A.D.2d 718, 719, 461 N.Y.S.2d 6, 7 (1st Dep't 1983) ("In an action for rescission, all parties to the agreement must be joined as necessary parties").

### D. *COMPENSATORY DAMAGES*

■ Plaintiffs' alternative claim for compensatory damages stemming from breach of contract fares no better than their primary claim for rescission. Law of the case forecloses Plaintiffs from seeking compensatory damages on remand. As the Court explained in its 2011 Order, the Court's prior rulings finding that Plaintiffs are not entitled to rescission damages were based on Plaintiffs' failure to establish a connection between the recordings at issue and the alleged royalty underpayments. This connection is necessary to prove either rescission or compensatory damages. Since damages are a required element of breach of contract, and law of the case makes it impossible for Plaintiffs to prove damages, Plaintiffs' breach of contract claim fails as a matter of law. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996) (listing damages as a required element for breach of contract under New York law).

Even if it were possible for Plaintiffs to prove compensatory damages based on royalties owed—and the record suggests otherwise—Plaintiffs waived that claim by failing to appeal the Court's March 2008 Order dismissing the Complaint. As the Court stated in the April 2008 Order, "[t]he Court's dismissal of the Complaint was intended to apply to the extent that any other issues remained open after the entry of the Default Judgment." Thus, the March 2008 Order disposed of Plaintiffs' alternative claim for breach of contract. On appeal to the Second Circuit, Plaintiffs sought review of the Court's ruling on rescission damages, but they did not seek review of the Court's dismissal of their alternative claim for relief. (*See* Plaintiffs' December 30 Letter, at 1 n. 2 ("Plaintiffs' ... claim for royalties w[as] not subject to the appeal.")). As a result, Plaintiffs waived their breach of contract claim and are therefore barred from pursuing it on remand.[4] *See ReGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.)*, 547 F.3d 484, 492 (2d Cir.2008) (holding argument not raised on appeal waived). The Court therefore concludes that Plaintiffs' alternative breach of contract claim fails as a matter of law.

### III. *ORDER*

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion of defendants Sanctuary Record Groups, Ltd. and Sanctuary Copyrights, Ltd. (collectively, "Defendants") for summary judgment, deemed by the Court to be set forth in Defendants' letter-brief dated December 10, 2010 (Docket No. 121), is GRANTED.

The clerk of the court is directed to terminate any pending motions and close this case.

**SO ORDERED.**

---

4. As the Defendants argue, and as the Court indicated in its 2011 Order, Plaintiffs elected not to pursue compensatory damages well before they failed to appeal the March 2008 Order. Plaintiffs declined to brief the issue of compensatory damages before Magistrate Judge Gorenstein, despite his explicit request. Even if, as the Plaintiffs contend, Magistrate Judge Gorenstein lacked jurisdiction over the issue of compensatory damages, Plaintiffs still failed to raise the issue before either Judge Owen or this Court after Magistrate Judge Gorenstein determined that Plaintiffs should not be awarded rescission damages.